NEW JERSEY STATE FIREMEN'S ASSOCIATION and JERSEY CITY FIREMEN'S RELIEF ASSOCIATION, complainants,

*v.*

MARY A. GILDEA et al., defendants.

[Decided December 31st, 1935.]

Messrs. *King & Vogt,* for the complainant.

Mr. *Mark A. Sullivan,* for the defendant Mary A. Gildea.

Mr. *Benjamin J. Darling,* for the defendants Gertrude K. Higgins and Helen A. Altz.

EGAN, V. C.

The complainant filed a bill of interpleader and deposited the sum of $300, payable as a death benefit by the complainant upon the death of John W. Gildea, husband of the defendant Mary A. Gildea and father of the defendants Gertrude K. Higgins and Helen A. Altz. The defendants entered into a stipulation of facts as follows:

"1. John W. Gildea died October 11th, 1932, a member in good standing of the Jersey City fire department after having served the necessary seven years to become exempt.

"2. John W. Gildea, at the time of his death, was a member of the Jersey City Firemen's Relief Association.

"3. On the death of said John W. Gildea there became due from the burial fund established by the New Jersey State Firemen's Association, the sum of $300, which has been paid into this court by said association in this proceeding.

"4. John W. Gildea died leaving only (a) Mary A. Gildea, his widow, who was his second wife; (b) Gertrude K. Higgins, his daughter by his first marriage; (c) Helen A. Altz, his daughter by his first marriage."

The complainant the New Jersey State Firemen's Association is a corporation formed under a special act of the legislature in 1885, page 144. 2 *Comp. Stat. p. 2430.* It is the parent body (section 26) of a number of local firemen's relief associations formed by virtue of the provisions of the same act. The object of corporations under the act is to establish and maintain a fund for the relief and burial of indigent exempt firemen and their families. Section 23, 2 *Comp. Stat. p. 2437.* Section 6 of the same act provides that the moneys of the association are for the benefit of indigent or disabled firemen or their families. The funds of the said association, as well as the local relief associations, are derived from the collection—through the commissioner of banking and insurance, now the state tax commissioner—of two per cent. on the premiums of fire insurance policies upon property in this state, written by fire insurance companies not organized under the laws of this state (laws of 1885, page 310). 2 *Comp. Stat: p. 2444.*

The 1885 act was amended by chapter 75 of the laws of 1922 (*Cum. Supp. Comp. Stat. p. 1293* ¶¶ *78-456b, 78-456c*), to permit the payment of benefits "to firemen and to their dependents not only during the lives of such firemen, but after their deaths in accordance with such reasonable rules and regulations in regard thereto as the executive committee of the New Jersey State Firemen's Association may from time to time establish." This statute provides:

Sec. 1. "Any fund * * * held by any relief association * * * may be used for the relief, support and maintenance of firemen, exempt, paid or volunteer, and of their dependents, not only during

the lives of such firemen but after their death, in accordance with such reasonable rules and regulations in regard thereto as the executive committee of the New Jersey State Firemen's Association may from time to time establish, which rules and regulations said executive committee is hereby given power and authority to make and establish, alter, amend and supplement. * * *"

Sec. 2. "Nothing in this act or in the act to which this is a supplement shall be construed to prevent the payment by any such association of funeral or burial benefits out of any funds to the natural beneficiaries of any fireman dying hereafter, in such amount and subject to such rules and limitations as said executive committee may from time to time establish."

The executive committee of the New Jersey State Firemen's Association, pursuant to the power given them under the statute, established rules and regulations relating to such fund, which, *inter alia,* is as follows (page 7 of the Compilation of Rules and Regulations in evidence) :

"To the next of kin of every deceased fireman * * * who has served the necessary seven years to become exempt, the maximum amount of $400 will be paid. * * * The next of kin interpreted to rank in the following order: Widow, children, father and mother, brothers and sisters."

On June 18th, 1932, the executive committee reduced the allowance from $400 to $300.

On page 8 of the last mentioned rules and regulations, a section thereof entitled "Undertaker's Bill" reads as follows:

"*Undertaker's Bill*—Where it is found that a disagreement exists between the next of kin and the undertaker in connection with the burial expenses of a deceased fireman, the advisory committee are empowered to use their discretion in the settlement of the claim. This shall apply to cases where no estate has been left sufficient to absorb the expenses. In cases where there is an estate sufficient to absorb the same, the undertaker must look to the estate for settlement and the burial benefit shall be paid direct to the next of kin."

At the hearing no proof was offered as to the value of the estate, nor of any disagreement between the next of kin and the undertaker, respecting the burial expenses of the deceased fireman. Therefore, this last expressed section has no application to the present controversy.

Section 1 of the statute empowers the executive committee to pay "any fund * * * in accordance with such reasonable rules and regulations * * * as the executive committee * * * may from time to time establish. * * *" The executive committee established the rule that payment should be made to "the next of kin interpreted to rank in the following order: Widow, children, father and mother, brothers and sisters."

Paragraph 11 of the bill of interpleader herein says:

"The complainants believe said burial benefit to be payable to the defendant Mary A. Gildea pursuant to the proof of claim previously filed by her but have been unable to determine or dispose of the merits of the claims of the defendants as between themselves. Complainants should not be threatened or subjected to the possible double payment of said benefit."

The claimant daughters of the deceased insist that the words "dependent" used in the act of 1922, or "natural beneficiaries," and "next of kin" used in the rules and regulations, limit the payment to blood relatives of decedent, or those standing in a dependent relation of consanguinity. I do not conceive that there is any doubt at all as to who is entitled to payment. The committee has unequivocally stated, or established, by rule or regulation the order in which payment should be made; and I believe the rule or regulation to be a reasonable one; and following that rule of order, the widow in the instant case is the person entitled to the fund; thereafter, come the children; then the parents; then the brothers and sisters.

In *Bennett* v. *Van Riper, 47 N. J. Eq. 563; 22 Atl. Rep. 1055,* it was decided that the phrase "related to," "relations," and "next of kin," whether used in statute, will or contract, include not only relations by blood, but connections by marriage.

Under the circumstances, I shall advise an order that the widow is entitled to the moneys.